# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 9, 2014

## STATE OF TENNESSEE v. STEVEN DESHAWN CRAWLEY

**Direct Appeal from the Criminal Court for Davidson County**
**Nos. 2011-B-1584 & 2013-A-479      Steve Dozier, Judge**

---

**No. M2013-01934-CCA-R3-CD - Filed May 7, 2014**

---

In two indictments, the Defendant, Steven Deshawn Crawley, pled guilty to one count of aggravated burglary, one count of aggravated robbery, one count of especially aggravated kidnapping, and three counts of aggravated rape. The trial court sentenced him to serve an effective sentence of forty-five years in the Tennessee Department of Correction. On appeal, the Defendant contends that the trial court erred when it sentenced him because it misapplied enhancement factors, failed to apply applicable mitigating factors, and failed to follow the sentencing guidelines set forth in Tennessee Code annotated sections 40-35-102, -103, and -115. After a thorough review of the record and the applicable authorities, we conclude no error exists in the judgments of the trial court. Accordingly, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Chad Davidson, Nashville, Tennessee, for the appellant, Steven Deshawn Crawley.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from two separate incidents, one occurring in October 2010 and the other in November 2010. For the October offenses, in case number 2011-B-1584, the

Davidson County grand jury indicted the Defendant for one count of aggravated burglary and one count of evading arrest. For the November offenses, in case number 2011-C-2238, the Davidson County grand jury indicted the Defendant for one count of aggravated robbery, one count of especially aggravated kidnapping, and four counts of aggravated rape. According to the trial court's sentencing order, case number 2011-C-2238 went to trial,[1] during which the Defendant contested the victim's identification of him as the assailant. The case resulted in a mistrial.

After the mistrial, case number 2011-C-2238, by virtue of a superseding indictment, became case number 2013-A-479, and the State submitted swabs from the victim's clothing for DNA testing. The testing indicated that the Defendant's DNA was on the victim's clothing. After these test results, the Defendant pled guilty to one count of aggravated robbery, one count of especially aggravated kidnapping, and three counts of aggravated rape. He also pled guilty to aggravated burglary in case number 2011-B-1584, and the State dismissed the evading arrest charge.

A transcript of the guilty plea hearing is not included in the record. The trial court's sentencing order, however, indicates that at the hearing the parties agreed:

> As to the Aggravated Robbery, the [D]efendant received an eight to twelve year sentence for the Court to determine the sentencing within that range to be served concurrent with the sentence in count three. As to the Especially Aggravated Kidnapping, the [D]efendant pled open to a fifteen to twenty-five year sentence for the Court to determine the sentence within that range. As to the three counts of Aggravated Rape, the Court is to determine the length of the sentence and whether any counts (other than counts one and three) are to be served consecutively. As a part of this resolution, the [D]efendant pled guilty to Aggravated Burglary ([case number] 2001-B-1584) and received a three year sentence to be served consecutive to any sentence in [case number] 2013-A-479.

At the sentencing hearing, the parties presented the following evidence: The State offered the presentence report, which the trial court admitted into evidence. The State also offered the 911 call, which the trial court admitted into evidence. The State next introduced the Defendant's motion to suppress the victim's identification of him because it contained the victim's testimony. The State noted that it had requested that the trial court apply several enhancement factors and that it sentence the Defendant consecutively.

---

[1]A trial transcript is not included in the record on appeal.

The State referenced the victim's testimony from a previous hearing, which was a part of the Defendant's motion to suppress. In that testimony, the victim, M.D.,[2] testified that on November 17, 2010, she was loading a U-Haul she had parked in an alley behind her apartment building. She recalled that it was 6:30 or 7:00 p.m. and that it had gotten dark. She loaded a few things into the truck and, as she was getting ready to leave, she heard someone "Shout a name." She said she did not pay much attention to this, and, shortly after, she was approached by the Defendant.

The victim explained that the Defendant grabbed her by her arm as she was getting ready to climb into the U-Haul. She said the Defendant started "fighting" her, and he took her purse. The Defendant told her that he had a gun and not to scream. At first, the victim did not see the gun, but she felt it when he pressed it up against her. At that point, she immediately stopped fighting. The victim said the Defendant did not have anything covering his face, and his face was approximately six inches from hers.

The Defendant told the victim to "walk," and she saw the gun, which she described as a revolver. The victim said she and the Defendant walked a short distance up the alley away from the truck. As she was walking, she told the Defendant that she had children and that he did not have to do this. The Defendant responded by telling her to "shut up and keep walking." The victim said she complied. The Defendant remained behind her. In the victim's words, "he was right there, he never left, I felt the gun, he never left, he told me to walk."

The victim said that she and the Defendant walked to a field a short distance away. There was a house with a car port or a shed close to it. In the field, the Defendant made her bend over, he took off her clothes, and he penetrated her vagina with his penis. The Defendant then put his penis in her anus, and she started to scream. The Defendant told her not to scream and placed the gun "hard" to the temple of her head.

The victim testified that the Defendant covered her head with her shirt, and told her to get on her knees. She complied, and he penetrated her mouth. The victim said that she told the Defendant that she would not tell anyone what had happened, and she reminded him she had children. He told her to "shut up and he kept pressing it." At one point the Defendant choked her.

The victim said that, before the Defendant left her in the field, he covered her eyes. He told her that if she moved or screamed he was going to "put a bullet in [her] head." The victim said that, after the Defendant left, she stayed in the field for approximately five

---

[2]To protect her privacy, we will refer to the victim as "the victim" or by her initials only.

minutes before she grabbed her pants and ran. She ran, "half naked," to the front of her apartment complex. There she started screaming, and a group of "kids" found her and called 911.

The victim said that she was taken to the hospital where a rape kit was performed. The victim said she identified the Defendant's photograph in a photographic line up as being the man who had raped her.

During the sentencing hearing, the victim testified that, "when you rape someone, you take everything. The only thing that they have left is just a body." The victim told the trial court that, since this attack, she suffered night terrors, some of which would stop her breathing due to complications with her asthma. She was required to sleep with a machine by her bed to assist in her breathing.

The victim said that she had also been diagnosed as "manic depressive" because of the incident. The victim said that she had been in counseling for a couple years on an ongoing basis to deal with the repercussions of this event. She said she could not allow anyone to get close to her because she can no longer "love like that." The victim said that, during the incident, the Defendant choked her. She pled with him and told him that she was a mother. He told her to "shut up" and continued to assault her. When she screamed in pain, he again told her to "shut up."

The victim testified that, on the 911 call, you can hear the terror in her voice. She said that she was scared that the men in the area who were approaching her as she was on the phone with the 911 operator might be her attacker. She explained that he had told her he would be watching her, and this scared her. Her fear was also exacerbated by the fact that her inhaler was in her purse, which the Defendant had stolen. She, therefore, could not treat the asthma attack she was suffering as a result of the rapes.

The Defendant testified that he was seventeen at the time of these rapes. The Defendant said he was sorry, and he hoped that the victim would forgive him. The Defendant said he realized that he had not only hurt the victim but his family as well. He said he was "young" and "wasn't thinking." The Defendant said that, upon his release, he planned to stay out of trouble. He had been working on his GED. He conceded that he had been in trouble "[a] couple of times" since being incarcerated for these offenses. When asked what he had learned, the Defendant said that he had learned he "messed up." He said he was sorry he had wasted the trial court's time by initially proceeding to trial before pleading guilty to these offenses.

During cross-examination, the Defendant acknowledged that he had an affiliation with

4

a gang referred to as the Bloods. He had been a member since he was fifteen or sixteen years old. The Defendant said that he was standing near the apartment complex with fellow gang members when he decided to rob the victim of her purse. He said he already had the gun on his person, as he had carried it all day, because he had "been into it with too many people." The Defendant agreed he was on bond for aggravated burglary at the time of these crimes. He had committed the aggravated burglary with other gang members.

The Defendant said that he did not initially think he was going to rape the victim. He said that he decided to rape her after the two fought, and she fought off his attack in front of his fellow gang members. He agreed he raped her as revenge because she made him look bad. The Defendant agreed he was erect and sexually excited by what he was doing. He agreed he told her he would put a bullet in her head and that he would be watching her. The Defendant said that, after the rape, he stayed in the area and watched the police arrive. He said he saw the victim crying hysterically and talking on the phone with 911. The Defendant said he told his fellow gang members what he had done to the victim in the field.

The Defendant agreed that he repeatedly lied about this incident. He told police that he had not raped the victim. He said he did not admit to anything until the DNA tests revealed he was the rapist. The Defendant said he was stealing because he needed money for drugs, shoes, and clothing.

After considering this evidence, the trial court applied three enhancement factors: enhancement factor (7), that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; (10) that the defendant had no hesitation about committing a crime when the risk to human life was high; and (13) that at the time the felony was committed the defendant was released on bail. T.C.A. § 40-35-114 (7), (10), (13) (2012). The trial court found that there were no applicable mitigating factors. The trial court sentenced the Defendant to ten years for the aggravated robbery conviction, twenty years for the especially aggravated kidnapping, twenty years for the aggravated rape conviction in Count 3, and twenty-one years for the aggravated rape convictions in Counts 4 and 5. The trial court found that the Defendant was a dangerous offender, and it ordered partial consecutive sentencing. It ordered that the Defendant's sentence in Count 4 run consecutively to his sentence in Count 5, and that the other counts run concurrently with those. It then imposed the agreed three-year sentence for the aggravated burglary in case number 2011-B-1584, for a total effective sentence of forty-five years.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it sentenced him because it misapplied the enhancement factors, failed to apply applicable mitigating factors,

5

and failed to follow the sentencing guidelines set forth in Tennessee Code annotated sections 40-35-102, -103, and -115. The State counters that the record supports the trial court's sentencing determinations. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*. at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence and consecutive sentencing. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn .2012). In *State v. Pollard*, the Court held, "the appropriate standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness. *State v. James Allen Pollard*, No. M2011-0032-SC-R11-CD, – S.W.3d – (Tenn. Dec. 20, 2013). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any

statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

## A. Application of Enhancement and Mitigating Factors

The Defendant asserts that the trial court improperly applied enhancement factor (10), that he had no hesitation about committing a crime when the risk to human life was high. T.C.A. 40-35-114 (10). The State concedes that the trial court misapplied this enhancement factor because the high risk to human life is inherent in the crime of aggravated rape involving the use of a weapon. The State argues, however, that any misapplication of enhancement factors does not remove the presumption of reasonableness of the sentence imposed by the trial court. The Defendant further asserts that the trial court erred by not applying mitigating factor (6), that the defendant because of his youth or old age lacked substantial judgment in committing the offense. T.C.A. § 40-35-113 (6). The State contends that the trial court did not improperly refuse to apply mitigating factor (6), considering the evidence presented at sentencing.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2012).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114 (2012); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *Carter*, 254 S.W.3d at 343. We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with

the purposes and principles of [the Sentencing Act].'" *Id*. at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

We agree with the State that the trial court misapplied enhancement factor (10) because it was inherent in the offense. *See State v. Antonio M. Byrd*, No. 02C01-9508-CR-00232, 1997 WL 1235 (Tenn. Crim. App., at Jackson, Jan. 2, 1997), *perm. app. denied* (Tenn. Sept. 22, 1997).

About mitigating factor (6), we conclude that the trial court did not err when it did not apply this mitigating factor. The Defendant was an admitted gang member, who had committed other offenses before the offenses in this case. The Defendant was on bond for aggravated burglary, and he committed the theft offenses to obtain money to pay for drugs, clothes, and shoes. The offense he committed, aggravated rape, was not one for which he lacked substantial judgment in committing. He committed these rapes as revenge for the victim fighting him while he was robbing her of her purse.

As previously stated, a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346. We conclude that the Defendant's sentence of forty-two years is consistent with the purposes set out in the Sentencing Act. The Defendant is not entitled to relief on this issue.

### B. Consecutive Sentencing

The Defendant next contends that the trial court erred when it ordered consecutive sentencing because the Defendant is a dangerous offender. He notes that he only raped the victim after she successfully "repelled his unarmed attempt at robbing her." The State counters that the trial court correctly found that the Defendant was a dangerous offender. T.C.A. 40-35-115(4) (2012).

Consecutive sentencing is a matter addressed to the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A trial court may order

multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the seven statutory factors exists. T.C.A. § 40-35-115(b)(1)-(7) (2012). In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." T.C.A. § 40-35-102(1), -103(2) (2012); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

In this case, the trial court found, "[t]he [D]efendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(4) (2012). Our Supreme Court has noted that the "dangerous offender" category is the hardest and most subjective to apply. *State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999). Consequently, our Supreme Court in *State v. Wilkerson* held that "particular facts" must show the following in order to base consecutive sentencing on subsection 115(b)(4): (1) that an extended sentence is necessary to protect the public against further criminal conduct by the defendant; and (2) that the consecutive sentences reasonably relate to the severity of the offenses committed. 905 S.W.2d 933, 938-39 (Tenn. 1995); *see State v. Robinson*, 146 S.W.3d 469, 524 (Tenn. 2004).

In discussing the applicability of the "dangerous offender" category to the Defendant, the trial court stated the following:

> In this case, the Court finds that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). The Court finds this factor applies as an additional aggregate term is necessary to appreciate the seriousness of this offense and is necessary to protect the public from further serious criminal conduct by this [D]efendant. The Court finds consecutive sentencing is reasonably related to the severity of the horrendous type of offenses committed against the victim. After the aggravated robbery occurred, the [D]efendant could have left the scene, but instead he forced the victim to move to a nearby field where the sexual assaults occurred. The proof at trial showed that the [D]efendant raped the victim vaginally, anally, and orally. He placed a gun to the victim's head and threatened her in order to perpetrate these crimes.

We conclude that the evidence supports the trial court's imposition of consecutive sentences. The evidence proved that the Defendant, who was on bond for committing aggravated burglary, was standing with fellow gang members when he saw the victim moving from her apartment. He decided to rob her of her purse, and he approached her armed with a gun. The two struggled over her purse, and the victim fought with him. The

Defendant decided then, as revenge for her making him look foolish in front of his fellow gang members, to rape her. He forced her at gunpoint to walk to a field where he raped her vaginally, anally, and orally. He told her to "shut up" when she cried out in pain, and he refused to listen to her pleas on behalf of herself and her children. When he was finished raping the victim, he left her there, telling her that he would kill her if she moved. He then went back to his friends and "hung out" with them, watching as the terrified victim called 911 and the police arrived. This evidence supports the trial court's finding that consecutive sentencing is necessary to protect the public and that the sentence is reasonably related to the seriousness of the offenses committed. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE